LILLIE, J.
 

 This is an appeal from part of a judgment in a mandamus proceeding which orders the various respondents below to allow petitioner Robert E. Hartman, as a director of a corporation at the time of its dissolution, to inspect the corporate books and records in their possession. A similar right was denied the remaining petitioner, Chester R. Hartman, it being found that he was not a director at the time in question.
 

 In issue is the construction to be given section 3004. Corporations Code, which provides in pertinent part that1 ‘ Every director shall have the absolute right at any reasonable time to inspect all books, records, documents of every kind ... of the corporation, domestic or foreign, of which he
 
 is
 
 a director . . . .” (Italics added.) Petitioners concede, and their pRading so alleged, that the company has been dissolved and the corporate property since distributed to the shareholders ; notwithstanding such dissolution, it is nevertheless alleged that petitioners “have various legal obligations arising out of such directorship and have the absolute right to examine the books and records of the corporation so as to protect themselves as to any of the legal obligations which may exist.” By their declaration in opposition, respondents point to the failure of any allegation that petitioners “are presently directors” of the company: instead, petitioners “merely allege that they
 
 were
 
 directors” [italics added] of
 
 *577
 
 said company. Attached to respondents’ declaration is a certificate of winding up and dissolution, signed by a majority of the directors and duly filed with the Secretary of State, which recites that the corporation has been completely wound up and its assets distributed to the shareholders; too, that adequate provision for the payment of all tax liabilities, federal and state, has been made by the deposit of the required sum with a depositary therein designated. (Corp. Code, § 5200.)
 

 A corporation may elect to wind up its affairs and voluntarily dissolve by the vote or written consent of shareholders representing 50 percent of the voting power (Corp. Code, § 4600) ; this, it seems, was the method of dissolution here invoked. Upon the commencement of such proceedings the board of directors nevertheless continues to act as a board and has full power to wind up and settle the corporation’s affairs. (Corp. Code, § 4800.) When this settlement has been accomplished, and upon the filing of the certificate of winding up and dissolution with the Secretary of State, the 11 corporate existence shall cease except for the purpose of further winding up if needed.” (Corp. Code, § 5201.) The statute last mentioned has been thus construed: 1 ‘ When a corporation has been wound up and dissolved and following the statutory scheme therefor, has surrendered its franchise, it ceases to exist. 1 According to the principles of the common law, a corporation which has been legally dissolved is dead. It no longer enjoys an existence for any purpose. The necessary effect of such death is not different from the death of a natural person.’ [Citations.]”
 
 (Stubbs
 
 v.
 
 Jones,
 
 121 Cal.App.2d 218, 223 [263 P.2d 100].) True the
 
 Stubbs
 
 case had no occasion to consider section 5400, Corporations Code, which (unlike the common law) recognizes the continuance of a corporation, despite its apparent legal death, for the purpose of litigating actions after dissolution and otherwise “winding up its affairs.”
 
 [1]
 
 But the relief petitioners here seek by way of mandamus makes no mention of the need of further winding up; instead, as noted above, they merely allege the existence of “various legal obligations” flowing from their directorship and their “absolute right” to examine the corporate books to protect themselves accordingly.
 

 Directors occupy a fiduciary relationship to the corporation and its stockholders
 
 (Bainbridge
 
 v.
 
 Stoner,
 
 16 Cal.2d
 
 *578
 
 423, 427 [106 P.2d 423]), and the unqualified right of inspection accorded them by the statute here invoked is manifestly in aid of such principle. We must determine, therefore, whether under the subject statute using as it does the present tense “is,” petitioner Robert B. Hartman continues to he a director for the several purposes by him pleaded and hence is entitled to the right by him demanded. The corporation is practically a family one, there being several branches thereof. Petitioners, presumably minority directors, never signed the certificate of winding up. While any differences among them had not then reached the point of open dispute, at the hearing it was represented to the court that petitioners simply wanted to see the corporate books to ascertain what they contained during the period of their directorship. After conceding that the petition contained no allegation of any wrongdoing, counsel reminded the court of the fiduciary relationship between his clients and the shareholders who might come in and say: “You have violated your fiduciary duty by not making proper and direct handling of corporate funds. ’ ’ Singled out, in this respect, was the statement in the certificate of winding up that certain funds were being held for payment of tax liability, for any error in which computation or otherwise, it was asserted, the directors would be personally liable. Although respondents below, both at the hearing- and subsequently by demand for special findings thereon, asked that the express purposes of the inspection be further or more clearly defined, the court determined otherwise. Finally, in the concluding paragraph of petitioners’ brief, it is asserted that since the right to inspection is an absolute one, any qualification thereto becomes an exception to the general rule and the burden incumbent on respondents to establish such exception was not met.
 

 We are of the view that the burden in this case lay with petitioners and not with respondents. As noted earlier, a corporation ceases to exist upon the filing of the certificate of dissolution with the Secretary of State; the sole exception provided by statute is its further existence “for the purpose of further winding up if needed.” (Corp. Code, § 5201,
 
 supra.)
 
 There is not the slightest intimation that such action is needed, and the failure of petitioners to allege that fact in the present case can only be surmised.
 
 [2]
 
 Under the law they
 
 *579
 
 were given the right of judicial supervision over the winding up of the corporation while it was being voluntarily dissolved (Corp. Code, § 4607); in that event, any order thereafter made would have discharged the directors “from their duties and liabilities to creditors and shareholders.” (Corp. Code, § 5204.) If the right to inspection is of the absolute character here asserted, the same claims could likewise be urged for such right after proceedings for winding up under court supervision. To state such a proposition, we believe, is to answer it.
 

 We are fortified in the above conclusions by a New York decision
 
 (Schor
 
 v.
 
 Barshor Realty Co.,
 
 218 N.Y.S.2d 11) construing a statute similar to that at bar. As here, the corporation was composed of blood relatives. It was voluntarily dissolved, cheeks representing the shareholders’ respective shares were distributed and receipted for, such cheeks being the net •amount due them after payment of bills and the creation of an escrow account to pay contingent bills and taxes. Thereafter petitioner Schor instituted a proceeding to compel submission of the corporate books for his examination upon the ground, according to the opinion, that “he is an officer and director of the corporation.” The right of inspection, as in the instant ease, was said to be an absolute one; unlike our case, however, there was no contention that the inspection was necessary for the proper discharge of his duties as a director. Quoting from an earlier New York case, the court pointed out that “ ‘Granting that ordinarily “the duty of a director is to direct,” his obligations are materially modified after a voluntary dissolution. He then is required to exercise only such power as is incidental to “paying, satisfying and discharging any existing debts or obligations, collecting and distributing its assets and doing all other acts required in order to adjust and wind up its business and -affairs.” [Citations.] These specific and limited provisions manifestly require compliance in order that the corporation may properly and legally be dissolved. Acts beyond the provisions of the statute would not be permissible.’ ” (P. 14.) Since
 
 Schor
 
 advanced no purpose connected with the statutory scheme, the application for inspection was denied. The same is substantially true of the present petition. No need for any inspection related to further winding up is alleged except the suggested possibility that petitioner’s stewardship may be challenged. But that possiblility exists with regard to every director of every corpora
 
 *580
 
 tion. Under such circumstances granting an inspection would be a gross abuse of inspection.
 

 That part of the judgment from which appeal is taken is reversed.
 

 Wood, P. J., concurred.
 

 Fourt, J., did not participate.
 

 [1]
 

 Henoe it is also provided that no action to which the corporation is a party shall abate by reason of proceedings for winding up (§ 5401) and that assets inadvertently omitted from the winding up shall be distributed accordingly (§ 5402).
 

 [2]
 

 We do not go so far as to declare that the present proceeding can be likened to ‘ ‘ the customary effort of the minority director to cause trouble and litigation and stir up friction with the majority.”
 
 (Dandini
 
 v.
 
 Superior Court,
 
 38 Cal.App.2d 32, 35 [100 P.2d 535].)